Benjamin M. Gipson (CA SBN: 222830)
ben.gipson@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3022
Fax: 310.595.3300

Michael W. Massiatte (TX SBN: 24026864)
michael.massiatte@us.dlapiper.com
(*Pro hac vice* application forthcoming)
Maria A. Garrett (TX SBN: 24099673)
maria.garrett@us.dlapiper.com
(*Pro hac vice* application forthcoming)
**DLA PIPER LLP (US)**
1900 North Pearl St., Suite 2200
Dallas, Texas 75201
Tel: 214.743.4500
Fax: 214.743.4545

Attorneys for Plaintiff
NATIONWIDE PROPERTY &
APPRAISAL SERVICES LLC,
A New Jersey limited liability company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE PROPERTY & APPRAISAL SERVICES LLC, a New Jersey limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NICOLE ANDREWS, an individual, RYAN ANDREWS, an individual, and FASTAPP INC., a New York corporation,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. §1836 *et seq.*)**<br>2. **Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act (California Civil Code §§ 3426 - 3426.11)**<br>3. **Breach of Fiduciary Duty of Loyalty** |

COMPLAINT FOR DAMAGES

4. **Breach of Contract**
5. **Failure to Use Ordinary Care and Diligence under California Labor Code § 2854**
6. **Failure to Comply with Employer's Directions under California Labor Code § 2856**
7. **Failure to Give Preference to Performance of Employer's Business Under California Labor Code § 2863**
8. **Tortious Interference with Contractual Relations**
9. **Tortious Interference with Business Relations**
10. **Aiding and Abetting**
11. **Conspiracy**

**DEMAND FOR JURY TRIAL**

COMPLAINT FOR DAMAGES

WEST\291806219.6

Plaintiff Nationwide Property & Appraisal Services LLC ("**Nationwide**" or the "**Company**") brings this complaint for damages and injunctive relief, pursuant to the subject matter jurisdiction of this Court, against Defendants Nicole Andrews ("**Nicole**"), Ryan Andrews ("**Ryan**"), and Fastapp Inc. ("**Fastapp**") (collectively, "**Defendants**"), and alleges the following:

## I.      INTRODUCTION

This is a case about the theft of an employer's confidential and proprietary information and business opportunities. Nicole was a highly trusted executive for Nationwide. Indeed, she was such a vital part of the Company, that she was entrusted with the creation and management of Nationwide's office and presence on the west coast. Additionally, Nationwide hired Nicole's son, Ryan, at her request. At no point in time did Nationwide imagine that the mother-and-son duo would use their familial relationship to misappropriate confidential information and usurp business opportunities. However, that is exactly what they did.

Shortly after Nicole resigned from Nationwide to join Fastapp, a direct competitor, Nationwide discovered that, during the last few months of her employment with Nationwide, Nicole had been forwarding to Fastapp sensitive and confidential information about Nationwide's operations and clients. Based on these forwarded emails, it is apparent that Nicole and Fastapp were conspiring to use Nicole's position at Nationwide—and entrustment with confidential information— to divert present and future business from Nationwide to Fastapp. The emails show Nicole was speaking to Nationwide clients about transferring their business from Nationwide to Fastapp, and then relaying relevant client information to Fastapp so it could secure the business on its behalf (and in direct competition with Nationwide).

Nationwide further discovered that once Nicole resigned and Ryan took over management responsibility for the accounts Nicole had formerly managed, Ryan

abdicated his own loyalty to the Company in favor of his loyalty to Nicole. Indeed, Ryan began forwarding Nationwide's confidential information to Nicole at her Fastapp email address. Ryan went as far as sending to Nicole and Fastapp requests for new customer quotes he received at Nationwide, ensuring that Nationwide never had the opportunity to secure (or earn) that business and, instead, giving such opportunity to Fastapp.

Defendants' actions have unjustly enriched them to the detriment of Nationwide and far exceed the norms of fair competition. These transgressions, if left unchecked, would not only irreparably damage Nationwide, but would also undermine basic principles of fairness upon which businesses, employees, and consumers operate and rely. Therefore, Nationwide brings this action to demand return of its confidential information; demand permanent destruction and/or removal from Defendants' premises, computers, electronic devices, and online systems of all Nationwide confidential information in Defendants' possession; preclude Defendants from continuing to use such information for any use—and, specifically, to unfairly compete with Nationwide; and request compensation for the damages sustained as a direct and proximate result of Defendants' unlawful conduct.

## II.    PARTIES

1.      Plaintiff Nationwide is a New Jersey limited liability company with its principal place of business located at 1103 Laurel Oak Road, Suite 160, Voorhees, New Jersey 08043.

2.      Defendant Nicole is an individual and a citizen of the State of California. She may be served with process at 231 Cedar Street, Newport Beach, California 92663, or wherever else she may be found.

3.      Defendant Ryan is an individual and a citizen of the State of California. He may be served with process at 231 Cedar Street, Newport Beach, California 92663, or wherever else he may be found.

4.      Defendant Fastapp is a New York corporation with its principal place of business located at 5118 13th Avenue, 3rd Floor, Brooklyn, New York 11219. Fastapp may be served with process by and through its registered agent, Legalzoom.com, at 101 N. Brand Boulevard, 11th Floor, Glendale, California 91203.

### III.   JURISDICTION

5.      This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute, namely the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* The Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367, as those claims are so related to Plaintiff's federal claim that they form part of the same case or controversy.

6.      Additionally, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs. Specifically, Plaintiff Nationwide, a New Jersey limited liability company with its principal place of business in New Jersey, is a citizen of New Jersey. Defendant Nicole, an individual, is a citizen of California. Defendant Ryan, also an individual, is a citizen of California. Defendant Fastapp, a New York corporation with its principal place of business in New York, is a citizen of New York.

7.      This Court has personal jurisdiction over Defendants Nicole and Ryan because they are California residents and this lawsuit arises out of their purposeful and unlawful conduct occurring within the State of California and in this District.

8.      This Court has personal jurisdiction over Defendant Fastapp because, upon information and belief, this lawsuit arises out of Fastapp's purposeful and unlawful conduct occurring within the State of California and in this District.

COMPLAINT FOR DAMAGES

## IV.   VENUE

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims raised in this lawsuit occurred in this District.

## V.     FACTUAL BACKGROUND

### A.    Nationwide's Business

10.     Nationwide is an appraisal management company based in Voorhees, New Jersey. The company is licensed in all 50 states and Washington D.C. and provides first-in-class appraisal management for the United States government, credit unions, banks, and wholesale lenders across the country.

11.     Nationwide prides itself in being a "one stop shop" for its clients' appraisal needs. Nationwide provides appraisal management services for residential, commercial, and industrial properties, including assessment appeals valuations, completion and update appraisals, divorce appraisals, estate planning and date of death valuations, foreclosure and REO cost to cure analysis, mortgage origination and refinancing, portfolio analysis and due diligence, pre-listing appraisals, private mortgage insurance removal, recertification or appraisal updates, and residential consulting.

12.     Since its founding, Nationwide has invested a significant amount of time and resources to develop a network of clients and potential clients throughout the United States.  As a result, Nationwide has been a respected leader in the appraisal management industry for years and enjoys a significant amount of goodwill in the industry and with its clients.

### B.    Nationwide's Reasonable Measures to Protect its Confidential Information

13.     Nationwide has spent many years and made significant investments of time and money to develop its goodwill, brand recognition, relationships with clients

and appraisers, marketing strategies, and proprietary processes, all of which it considers confidential information. Nationwide uses and relies on its confidential information to effectively compete and maintain its position as a top appraisal management company throughout the country.

14. Because maintaining the confidentiality of its information is essential to Nationwide's commercial success, Nationwide takes reasonably calculated steps to protect its confidential information. For example, Nationwide requires employees who have access to the Company's confidential information to execute non-disclosure agreements as a condition of employment. These non-disclosure agreements notify employees that, to facilitate their business operations, Nationwide will disclose certain information it deems confidential. In exchange for Nationwide's disclosure of such confidential information, employees are required to maintain the confidentiality of it, by, among other things, avoiding disclosure of it to third parties.

15. Additionally, Nationwide uses Appraisal Scope, a licensed software application customized and maintained by a third party for Nationwide's proprietary usage, to store and control access to Nationwide's confidential information. Each employee is given a unique username and password to access Nationwide's instance of Appraisal Scope. However, each employee is given access only to the queues and sections of the system he or she needs in the performance of his or her particular role in the appraisal process. As such, only employees with the need to access certain confidential information have access to it.

16. Further, upon termination of employment, Nationwide requires employees to return any confidential information in their possession, custody, or control. Nationwide reminds departing employees of their continuing obligations owed to the Company, including their obligations not to retain, use, or disclose Company confidential information.

17.     Nationwide's protection of its confidential information extends beyond its employees. For example, Nationwide requires clients and appraisers with access to Nationwide's instance of Appraisal Scope to sign non-disclosure agreements similar to those executed by employees. And, like employees, clients and appraisers with access to Appraisal Scope have individualized login credentials and are given access only to the specific queues and sections of the system needed for that specific client or appraiser.

**C.     Nicole and Ryan's Employment with Nationwide and Execution of Non-Disclosure Agreements**

18.     Nicole and Ryan are mother and son. They were both, prior to this action, employees of Nationwide.

19.     On or about October 15, 2012, Nationwide hired Nicole as the Chief Sales and Marketing Officer, West Coast Region. In October 2019, her title was changed, to align it relative to others across Nationwide, to Senior Vice President— National Account Executive, but her position otherwise remained the same. In her role, Nicole was responsible for the Company's entire west coast office and its operations. Nicole assisted Nationwide with the creation of the Company's west coast office in California. Once the office was up and running in April 2015, Nicole was responsible for overseeing and managing that office. This included, among other duties, hiring and managing employees for this location, which largely supported the clients Nicole managed for Nationwide, and making determinations regarding what potential clients to pursue.

20.     As a result of her executive role within the Company, Nicole was privy to Nationwide's strategies regarding appraisal products, client acquisition, business acquisitions, and target pricing.

21.     In addition to her managerial duties, Nicole also serviced client accounts. Her duties included meeting with senior management, loan officers,

brokers, and other key decision makers of existing and potential clients to secure, manage, and build appraisal order volume from both. As a member of Nationwide's sales team, Nicole was given access to target lists of clients and potential clients, provided access to key decision-making employees within such organizations, and clothed with Nationwide's goodwill, all of which assisted her in developing relationships with such contacts. Nicole was expected to build a network, on behalf of Nationwide, with contacts within clients and potential clients, to visit with such contacts frequently, to coordinate with Nationwide's internal and outside account managers to ensure that the client needs were being met, and to remain connected with such contacts as they moved among client locations or to other potential clients. Put simply, Nicole's key functions were to serve as a face of Nationwide and use its goodwill and confidential information to strengthen relationships with existing clients and to pursue and develop relationships with potential clients.

22.    On or about July 25, 2016, at Nicole's request, Nationwide hired Ryan as an Account Executive to support Nationwide's west coast operations and clients managed by Nicole. Subsequently, Nationwide promoted Ryan to Outside Account Manager. The purpose of the Outside Account Manager position is to keep Nationwide "top-of-mind" among existing clients and to increase sales through (i) deeper penetration of, and long-term relationship building within, existing clients and (ii) addition of new clients, through increased direct live contact and referrals to related branches and/or new locations by providing them with a high level of customer service. Outside Account Managers are responsible for increasing client loyalty to Nationwide and increasing the likelihood that Nationwide will become the clients' appraisal management company of choice. Additionally, this role is expected to increase targeting and visitation of potential clients.

23.    Like Nicole, Ryan's duties included meeting face-to-face with existing and potential clients, including representing Nationwide at trade shows, sponsored

events, and client functions, and building appraisal order volume. As a member of Nationwide's sales team, Ryan was given access to target lists of clients and potential clients, provided access to key decision-making employees within such organizations, and clothed with Nationwide's goodwill, all of which assisted him in developing relationships with such contacts. Ryan was expected to build a network, on behalf of Nationwide, with key contacts within clients and potential clients, to visit with such contacts frequently to ensure their needs were being met, and to remain connected with such contacts as they moved along client locations or to other potential clients. Ryan also managed any issues that arose with the clients to which he was assigned and was expected to provide favorable outcomes to deepen Nationwide's relationship with the client. Moreover, Ryan was expected to update Nationwide regularly on the status of client relationships.

24.     Given their representation of Nationwide, their client-facing roles, and their responsibility for the development of client relationships, Nicole and Ryan had access to Nationwide's clients and confidential information. Therefore, on June 9, 2014, Nicole executed a non-disclosure agreement with Nationwide. Ryan executed a non-disclosure agreement with Nationwide on July 22, 2016. Both non-disclosure agreements are, in all relevant respects, identical and are hereby referred to collectively as the "**Non-Disclosure Agreements**."

25.     Under the terms of the Non-Disclosure Agreements, Nicole and Ryan agreed they would:

A.   Hold Proprietary and Confidential Information in confidence, and not disclose it to any third party, including any competitors, parent, subsidiary or affiliate company, and [that they] shall use [their] best efforts to protect Confidential Information in accordance with the same degree of care with which [they] protect[] [their] own Confidential Information of like importance;

B.   Use Confidential Information only for the purpose set forth [in the Non-Disclosure Agreements], except as may otherwise be agreed in writing by authorized individuals; [and]

C.   Not email, fax, verbally communicate or copy or otherwise duplicate Confidential Information, or knowingly allow anyone else to copy or otherwise duplicate any Confidential Information then under its control without the disclosing party's written approval.

26.   Additionally, Nicole and Ryan agreed to return all confidential information upon Nationwide's request.

27.   "Confidential Information" was defined to mean "information relating to clients," which may include "confidential information, business plans, technology, techniques, programs, business directions, marketing plans, data arrangement and acquisition, and other technical and business information."

28.   The obligations owed by Nicole and Ryan to Nationwide under the Non-Disclosure Agreements run indefinitely and survive the termination of their employment with the Company.

29.   Both Nicole and Ryan were permitted to use their personal computers and cell phones during their employment, subject to the terms of the Non-Disclosure Agreements. Thus, while confidential information may have been used or stored on their personal devices, all confidential information remained the property of Nationwide and Nicole and Ryan were obligated to maintain their confidentiality and return it upon their departure from the Company. Importantly, because Nicole's and Ryan's personal devices were used for business purposes, Nationwide provided support services for them through a contracted technology company.

30.   Nicole and Ryan were not, however, authorized to use their personal email accounts to conduct Nationwide business. Nevertheless, upon information and belief, Nicole and Ryan, on occasion, used their personal email accounts, rather than

their Nationwide-issued email addresses, to send emails (that included, referenced, or discussed confidential information) on behalf of Nationwide.

**D.    Nicole Leaves Nationwide to Join Fastapp, a Direct Competitor**

31.    On or about June 18, 2020, Nicole gave notice of her resignation effective June 30, 2020. Upon information and belief, prior to her resignation, she had already accepted a position with Fastapp, a direct competitor of Nationwide's.

32.    Like Nationwide, Fastapp is an appraisal management company operating in most of the United States, with licenses pending in the states in which it is not currently licensed. And, like Nationwide, it provides property valuation services for residential, commercial, and industrial properties. Notably, the clients Fastapp seeks are similar to Nationwide's clients: lenders, mortgage brokers, real estate agents, bankers, private investors, lawyers, insurance agents, and accountants.

33.    Upon Nicole's departure, Ryan inherited (and was paid sales commissions on) most of the client accounts previously managed by his mother and was the primary Nationwide representative in communication with those clients. He also had access to Nicole's Nationwide email inbox so he could monitor client communications sent to her old inbox and ensure Nationwide was responding and taking care of its clients' needs.

**E.    Nationwide Discovers Nicole and Ryan's Improper Disclosure and Use of Nationwide Confidential Information**

34.    Shortly after her departure, Nationwide discovered Nicole had forwarded several emails containing confidential information to representatives of Fastapp and, upon information and belief, to her personal email accounts. For example, on March 19, 2020, Nicole forwarded an email to Fastapp that contained the Company's confidential and proprietary COVID response policies and disclosed information belonging to one of Nationwide's clients (which, significantly, was Nicole's biggest client at Nationwide). It is important to note this email was

forwarded: (1) from Nicole's Nationwide email address; (2) during her employment with Nationwide; and (3) three months before her resignation from Nationwide. Therefore, Fastapp knew the information was coming directly from a Nationwide employee and knew or should have known the sensitive and confidential nature of such information.

35.     Nicole's forwarding and disclosure of confidential information continued through her remaining tenure with Nationwide. For instance, on June 25, 2020—during the last two weeks, and after her resignation, of her employment with Nationwide—Nicole exchanged emails with a Nationwide client. The client apparently sent the email as a "follow up to [their] conversation" earlier that day and requested that Nicole provide "a quote for services offered at [her] *new* job." (emphasis added). Thus, it is apparent that during her employment with Nationwide, Nicole was speaking to Nationwide clients about the transition of their business to Fastapp, in contravention to her duties to support Nationwide. Notably, this client ceased placing appraisal orders with Nationwide on or about March 15, 2020, proximate in time to when Nicole is known to have been forwarding confidential information to Fastapp.

36.     Nicole forwarded the same June 25 email to Fastapp representatives, noting that this "is the account *we were discussing*." (emphasis added). This suggests Nicole was also discussing the transferring of Nationwide business to Fastapp with Fastapp representatives, and that Fastapp was both aware of, and appears to have encouraged, this ploy.  There are no indications that Fastapp ever declined this information or requested Nicole to stop forwarding Nationwide's confidential information.

37.     Once Nicole resigned her Nationwide employment, Ryan, who then had access to his mother's Nationwide email account and clients, began forwarding Nationwide confidential information to Nicole at Fastapp. For example, when

Nicole's former Nationwide clients emailed her at her Nationwide email address, Ryan forwarded such emails to Nicole at her new Fastapp email address rather than answering the email on behalf of Nationwide or simply holding such emails on behalf of Nationwide.

38.     Additionally, on at least one occasion, Ryan received an email at Nicole's Nationwide email address in which a potential client inquired about setting up a new lender relationship *with Nationwide*. Again, rather than answering the email for Nationwide and in any way attempting to secure new business for Nationwide consistent with his job responsibilities, Ryan forwarded the email to Nicole at her Fastapp email address.

39.     It is without doubt that none of these emails would have been diverted and redirected to Fastapp but for the familial relationship between Nicole and Ryan and because of the potential for Ryan to become employed by Fastapp, which, apparently, took precedence for Ryan over his employment relationship with Nationwide. As a result, Nationwide terminated Ryan's employment on August 3, 2020. Upon information and belief, Ryan is now employed by Fastapp along with Nicole.

40.     Since Nicole and Ryan's unlawful disclosure of Nationwide's confidential information and their departure to Fastapp, at least the top three accounts they managed have transferred their business away from Nationwide and, upon information and belief, to Fastapp. As one example, Nicole's top account (which was managed by Ryan upon Nicole's departure) was making approximately 1,500 orders per month prior to August 2020. As indicated above, Nicole was forwarding information about this client to Fastapp around March 2020. The client's orders started declining after Nicole's departure, and the orders stood at a mere 369 for the month-to-date as of September 15, 2020. This reduction in orders represents a decline of approximately 46%, even as Nationwide's total business increased by

about 15% in the same timeframe.   Upon information and belief, Defendants' misappropriation of Nationwide's confidential information and the breach of their fiduciary duty of loyalty, as applicable, has resulted in tens of millions of dollars' worth of damages to Nationwide from lost business.

**F.      Nationwide Sent Demand Letters to Defendants**

41.      On August 4, 2020, Nationwide sent Nicole and Ryan each a letter reminding them of their continuing contractual duties owed to Nationwide under the Non-Disclosure Agreements. Nationwide informed Nicole and Ryan of the nature of the information it had discovered thus far regarding their improper disclosure and use of Nationwide's confidential information. Nationwide requested Nicole and Ryan (1) return all Company confidential information; (2) certify, in writing, that all Company confidential information has been returned and shall not be used or disclosed by them; and (3) provide Nationwide with written assurances that they would permanently cease and desist from further use of all Company confidential information. Additionally, given that Nicole and Ryan used their personal devices and, it appears at times also their personal email addresses, Nationwide requested access to their devices in order to ensure all its confidential information was removed from such devices and systems.

42.      Nicole and Ryan have, for the most part, refused Nationwide's requests. While Nicole and Ryan purport to have produced the Nationwide confidential information on their personal devices, they refuse to allow Nationwide to conduct an examination of the devices to ensure that all of Nationwide's confidential information has been identified so that such information may be properly removed from their devices. Moreover, they both refuse to make assurances regarding their past, current, or future disclosure and use of Nationwide confidential information.

43.      Nationwide sent a similar letter to Fastapp on August 4, 2020. In this letter, Nationwide notified Fastapp of the continuing obligations owed to

Nationwide by Nicole and Ryan. Like with Nicole's and Ryan's letters, Nationwide explained to Fastapp the evidence it had gathered regarding the improper forwarding of Company confidential information to Fastapp. Nationwide requested Fastapp's assistance in returning all Nationwide confidential information in Fastapp's possession, custody, or control. Like Nicole and Ryan, Fastapp has not cooperated with Nationwide.

44.     Defendants' actions and refusals to cooperate have left Nationwide with no choice but to file the instant action. Thus, Nationwide brings this lawsuit to recover its confidential information from Defendants and all those in concert with them as well as damages caused by their wrongful actions.

45.     Upon information and belief, Nicole and Ryan continue to retain Nationwide's confidential information in their possession and have shared this information with Fastapp. Upon information and belief, Defendants have worked together to disclose and misappropriate Nationwide's confidential information so that Fastapp could gain an unfair advantage in the marketplace. Nationwide's confidential information is the product of more than twelve years of hard labor and substantial financial investment. Nicole and Ryan's actions, in concert with those of Fastapp, unjustly enriched Defendants, who are, by receiving and using this confidential information, avoiding expenditure of their own time, labor, and expense.

## VI.    CAUSES OF ACTION

### COUNT I—MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. §§ 1836 *et seq.*)

### (Against All Defendants)

46.     Nationwide incorporates the preceding allegations as if fully set forth herein.

COMPLAINT FOR DAMAGES

47.     Nationwide has developed and marketed an extremely successful appraisal management business. Given the competitive nature of this business, the compilation of sensitive information relating to clients, potential clients, and business operations, and the confidentiality of such information, is of utmost importance.

48.     As a result of Nicole and Ryan's employment with Nationwide—and specifically as to Nicole, the entrustment of a position within Nationwide's executive team, and as the principal executive overseeing the Company's west coast operations—Nicole and Ryan came into possession of confidential, proprietary, and trade secret information having independent economic value and not generally known or readily available to the public, including Nationwide's competitors. Nationwide expended substantial time, energy, money, and ingenuity in compiling this information based on its own efforts and communications with clients, prospective clients, and others.

49.     The confidential, proprietary, and trade secret information to which Nicole and Ryan had access and of which they came into possession includes, but is not limited to: Nationwide's current and potential client lists, customer pricing, business plans, operational strategies, marketing plans, business directions, data arrangement and acquisition, and sensitive underlying data used to develop this confidential, proprietary, and trade secret information. Nationwide granted Nicole and Ryan with access to Nationwide's confidential information solely for the purpose of fulfilling their responsibilities to Nationwide.

50.     Nationwide made reasonable efforts to ensure that the confidential and proprietary information remained secret by, among other things, disclosing it only to those individuals who needed the information to perform their duties; making known to these individuals the fact that the information was to be kept confidential; maintaining reasonable security in and around its place of business and within its

online systems; and requiring individuals, such as Nicole and Ryan, to agree to keep its confidence, including by executing written agreements affirming their obligation to keep such information confidential.

51.     Nationwide's confidential information—namely, lists and compilations of current and potential clients; client fee lists and pricing strategies; and marketing plans and strategies—constitutes protectable trade secrets under the Defend Trade Secrets Act, codified at 18 U.S.C. § 1836 *et seq.* (the "**DTSA**").

52.     Nationwide is informed and believes, and thereon alleges, that Defendants violated the DTSA by misappropriating the trade secrets embodied in Nationwide's confidential information in a willful manner and with the deliberate intent to injure Nationwide's business, and to improve Fastapp's own business and for Defendants' own financial gain—including, without limitation and as further set forth above, by (1) ratifying and/or knowingly benefitting from the downloading of trade secret information from Nationwide's computer systems and transferring that information to personal computers and/or Defendants' computers; (2) ratifying and/or knowingly benefitting from the forwarding of trade secret information from Nationwide's email systems to Defendants' personal or business email systems; (3) disclosing to Nationwide's competitors confidential and trade secret information pertaining to Nationwide's client lists and contacts, pricing quotes, business plans, operational strategies, and sensitive information regarding clients; (4) disclosing Nationwide's confidential pricing information pertaining to Nationwide's customers; (5) using Nationwide's trade secrets pertaining to its clients and pricing structures to unlawfully solicit Nationwide's customers to transfer their business to Nationwide competitors; and (6) using Nationwide's trade secrets for their own benefit and that of Nationwide's competitors.

53.     As a proximate result of the misappropriation of Nationwide's trade secrets and/or confidential information, Nationwide has suffered, and will continue

to suffer, actual damages, and Defendants will be unjustly enriched, in sums to be proven at trial. Nationwide has suffered and will continue to suffer immediate and irreparable harm and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

54.     Under the DTSA, Nationwide is entitled to recover its reasonable attorneys' fees as a result of Defendants' willful and malicious appropriation.

55.     The misappropriation and wrongful acts of Defendants were intentional, malicious, and in bad faith and have subjected and will continue to subject Nationwide to cruel and unjust hardship in conscious disregard of Nationwide's rights, so as to justify an award of exemplary and punitive damages according to proof at trial.

## COUNT II—MISAPPROPRIATION OF TRADE SECRETS UNDER THE CALIFORNIA UNIFORM TRADE SECRETS ACT (California Civil Code §§ 3426 *et seq.*)

### (Against All Defendants)

56.     Nationwide incorporates the preceding allegations as if fully set forth herein.

57.     Nationwide has developed and marketed an extremely successful appraisal management business. Given the competitive nature of this business, the compilation of sensitive information relating to clients and business operations and the confidentiality of such information is of utmost importance.

58.     As a result of Nicole and Ryan's employment with Nationwide—and specifically as to Nicole, the entrustment of a position within Nationwide's executive team, and as the principal executive overseeing the Company's west coast operations—Nicole and Ryan came into possession of confidential, proprietary, and trade secret information having independent economic value and not generally known or readily available to the public, including Nationwide's competitors.

1  Nationwide expended substantial time, energy, money, and ingenuity in compiling
2  this information based on its own efforts and communications with clients,
3  prospective clients, and others.

4      59.    The confidential, proprietary, and trade secret information to which
5  Nicole and Ryan had access and of which they came into possession includes, but is
6  not limited to: Nationwide's current and potential client lists, customer pricing,
7  business plans, operational strategies, marketing plans, business directions, data
8  arrangement and acquisition, and sensitive underlying data used to develop this
9  confidential, proprietary, and trade secret information. Nationwide granted Nicole
10 and Ryan with access to Nationwide's confidential information solely for the
11 purpose of fulfilling their responsibilities to Nationwide.

12     60.    Nationwide made reasonable efforts to ensure that the confidential and
13 proprietary information remained secret by, among other things, disclosing it only
14 to those individuals who needed the information to perform their duties; making
15 known to these individuals the fact that the information was to be kept confidential;
16 maintaining reasonable security in and around its place of business and within its
17 online systems; and requiring individuals, such as Nicole and Ryan, to agree to keep
18 its confidence, including by executing written agreements affirming their obligation
19 to keep such information confidential.

20     61.    Nationwide's confidential information—namely, lists and compilations
21 of current and potential clients; client fee lists and pricing strategies; and marketing
22 plans and strategies—constitutes protectable trade secrets under the California
23 Uniform Trade Secrets Act, codified at California Civil Code §§ 3426-3426.11 (the
24 "**CUTSA**").

25     62.    Nationwide is informed and believes, and thereon alleges, that
26 Defendants violated the CUTSA by misappropriating the trade secrets embodied in
27 Nationwide's confidential information in a willful manner and with the deliberate
28

intent to injure Nationwide's business, and to improve Fastapp's own business and for Defendants' own financial gain—including, without limitation and as further set forth above, by (1) ratifying and/or knowingly benefitting from the downloading of trade secret information from Nationwide's computer systems and transferring that information to personal computers and/or Defendants' computers; (2) ratifying and/or knowingly benefitting from the forwarding of trade secret information from Nationwide's email systems to Defendants' personal or business email systems; (3) disclosing to Nationwide's competitors confidential and trade secret information pertaining to Nationwide's client lists and contacts, pricing quotes, business plans, operational strategies, and sensitive information regarding clients; (4) disclosing Nationwide's confidential pricing information pertaining to Nationwide's customers; (5) using Nationwide's trade secrets pertaining to its clients and pricing structures to unlawfully solicit Nationwide's customers to transfer their business to Nationwide competitors; and (6) using Nationwide's trade secrets for their own benefit and that of Nationwide's competitors.

63.    As a proximate result of the misappropriation of Nationwide's trade secrets and/or confidential information, Nationwide has suffered, and will continue to suffer, actual damages, and Defendants will be unjustly enriched, in sums to be proven at trial. Nationwide has suffered and will continue to suffer immediate and irreparable harm and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

64.    Under the CUTSA, Nationwide is entitled to recover its reasonable attorneys' fees as a result of Defendants' willful and malicious misappropriation.

65.    The misappropriation and wrongful acts of Defendants were intentional, malicious, and in bad faith and have subjected and will continue to subject Nationwide to cruel and unjust hardship in conscious disregard of

1   Nationwide's rights, so as to justify an award of exemplary and punitive damages
2   according to proof at trial.

3                    **COUNT III—BREACH OF FIDUCIARY DUTY OF LOYALTY**
4                        **(Against Defendants Nicole and Ryan)**

5          66.    Nationwide incorporates the preceding allegations as if fully set forth
6   herein.

7          67.    At all times pertinent hereto, Nicole and Ryan were employees owing
8   a duty of loyalty to Nationwide, as their employer. Nicole and Ryan were highly
9   valued, highly compensated, and entrusted by Nationwide with access to its most
10  confidential information. In addition, as an executive and the principal manager
11  overseeing west coast operations, Nicole was entrusted with ultra-sensitive and
12  ultra-competitive information and was responsible for the Company's well-being
13  within a specific geographic area, in addition to her role in managing clients
14  throughout the country. As a result, Nicole and Ryan owed Nationwide a fiduciary
15  duty that required them to, *inter alia*, devote all their time and attention during
16  business hours to the business of Nationwide, to refrain from engaging in a business
17  or business activity that competed with Nationwide, to refrain from conducting
18  activities in any manner inimical to Nationwide's best interests, and to refrain from
19  secreting business opportunities obtained through the exploitation of their positions
20  as agents of Nationwide.

21         68.    Nicole and Ryan breached their fiduciary duties to Nationwide by
22  engaging in the wrongful conduct alleged herein while still employed with
23  Nationwide, including, but not limited to: (1) planning and conspiring to steal
24  Nationwide's trade secrets and confidential information and using or disclosing such
25  information to third parties competitive with Nationwide's business, including
26  Fastapp; (2) upon information and belief, soliciting Nationwide's clients and
27  potential clients to divert their business away from Nationwide and, instead, to

28

Fastapp; (3) providing non-Nationwide employees—and specifically, competitors—access to Nationwide's confidential information; and (4) diverting potential business opportunities from Nationwide to Fastapp. Nicole and Ryan used Nationwide's time, facilities, and resources to engage in this wrongful conduct.

69.    As a direct and proximate result of those breaches, Nationwide has sustained and will incur further damages, including, but not limited to, damages reflecting lost business, lost profits, damage to its goodwill, and the salary, commissions, and other compensation paid to Nicole and Ryan during any period of their breaches, in amounts to be proven at trial.

70.    The aforementioned wrongful conduct was intentional, malicious, and in bad faith and has subjected and will continue to subject Nationwide to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages according to proof at trial.

## COUNT IV—BREACH OF CONTRACT

### (Non-Disclosure Agreements)

### (Against Defendants Nicole and Ryan)

71.    Nationwide incorporates the preceding allegations as if fully set forth herein.

72.    The Non-Disclosure Agreements are valid and enforceable agreements between Nicole and Ryan, on the one hand, and Nationwide, on the other.

73.    Pursuant to the Non-Disclosure Agreements, Nationwide agreed to provide Nicole and Ryan with access to its confidential information to facilitate their duties. In exchange, Nicole and Ryan agreed to maintain and preserve the confidentiality of Nationwide's information; not to disclose Nationwide's confidential information to any third party, including Nationwide's competitors; not to use the confidential information for purposes other than to perform their duties

for Nationwide; and to return all confidential information in their possession, custody, or control upon their departure from the Company.

74.     Nationwide has performed all duties and obligations under the Non-Disclosure Agreements. Specifically, Nationwide provided Nicole and Ryan with its confidential information, to which they would not otherwise have had access.

75.     Nicole and Ryan breached their obligations to Nationwide by, among other things, forwarding Nationwide confidential information to themselves, each other, and Fastapp; disclosing Nationwide's confidential information with third parties, including Fastapp; using Nationwide's confidential information to unfairly compete with it and for theirs and Fastapp's economic gain; and failing to return, and retaining possession of, Nationwide's confidential information after the termination of their employment with Nationwide.

76.     As a direct and proximate result of those breaches, Nationwide has sustained and will incur further damages, including, but not limited to, damages reflecting lost business, lost profits, and damage to its goodwill. Nationwide has also suffered and will continue to suffer immediate and irreparable harm and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

## COUNT V—FAILURE TO USE ORDINARY CARE AND DILIGENCE UNDER CALIFORNIA LABOR CODE § 2854
### (Against Defendants Nicole and Ryan)

77.     Nationwide incorporates the preceding allegations as if fully set forth herein.

78.     Pursuant to California Labor Code § 2854, an employee is required to use ordinary care and diligence throughout the course of employment.

79.     As Nationwide employees, Nicole and Ryan had a duty to use ordinary care and diligence in connection with their employment.

80.     By deliberately engaging in the conduct set forth above, Nicole and Ryan breached their duty to use ordinary care and diligence as employees of Nationwide, in violation of California Labor Code § 2854.

81.     As a direct and proximate result of Nicole's and Ryan's breaches of their duty to use ordinary care and diligence, they have been unjustly enriched, and Nationwide has been damaged in amounts to be proven at trial.

## COUNT VI—FAILURE TO COMPLY WITH EMPLOYER'S DIRECTIONS UNDER CALIFORNIA LABOR CODE § 2856
### (Against Defendants Nicole and Ryan)

82.     Nationwide incorporates the preceding allegations as if fully set forth herein.

83.     Pursuant to California Labor Code § 2856, an employee shall substantially comply with all the directions of his or her employer concerning the services on which the employee is engaged, except where such obedience is impossible or unlawful, or would impose new or unrealistic burdens upon the employee.

84.     As employees of Nationwide, Nicole and Ryan were obligated to comply with Nationwide's directives including acting in its best interests. Complying with Nationwide's directives, which, among others, included the directive to maintain the confidentiality of its information, was neither impossible nor unlawful and did not impose any unrealistic burdens on Nicole and Ryan. To the contrary, the realistic expectations for Nicole and Ryan were for them to act in Nationwide's best interests at all times and to maintain the confidentiality of its sensitive and proprietary information.

85.     By deliberately engaging in the conduct set forth above, Nicole and Ryan breached their obligations to comply with Nationwide's directives and instead acted contrary to Nationwide's best interests.

86.     As a direct and proximate result of Nicole's and Ryan's breaches of this duty, they have been unjustly enriched in an amount to be proven at trial.

## COUNT VII—FAILURE TO GIVE PREFERENCE TO PERFORMANCE OF EMPLOYER'S BUSINESS UNDER CALIFORNIA LABOR CODE § 2863

### (Against Defendants Nicole and Ryan)

87.     Nationwide incorporates the preceding allegations as if fully set forth herein.

88.     Pursuant to California Labor Code § 2863, an employee who has any business to transact on his own account, similar to that entrusted to him or her by his or her employer, shall always give the preference to the business of the employer.

89.     As set forth above, Nicole and Ryan, on several occasions, engaged in conduct that was designed to benefit them personally to the detriment of Nationwide.

90.     Nicole and Ryan, by devoting their time and energy to helping themselves, violated California Labor Code § 2863.

91.     As a direct and proximate result of Nicole's and Ryan's violations of California Labor Code § 2863, they were unjustly enriched in amounts to be proven at trial.

## COUNT VIII—TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### (Non-Disclosure Agreements)

### (Against Defendants Fastapp and Nicole)

92.     Nationwide incorporates the preceding allegations as if fully set forth herein.

- 24 -

COMPLAINT FOR DAMAGES

93.    The Non-Disclosure Agreements are valid and enforceable contracts between Nicole and Ryan, on the one hand, and Nationwide, on the other.

94.    Fastapp knew or should have known about the contracts between Nicole and Ryan. At the very latest, Fastapp learned of Nicole's and Ryan's contractual obligations not to disclose or use Nationwide's confidential information as of August 4, 2020, when Nationwide relayed the same to Fastapp. In addition, Nicole had knowledge of Ryan's contract with Nationwide given her own similar position within the Company.

95.    Nevertheless, Fastapp intentionally, improperly, and without privilege interfered with the contractual obligations between Nicole and Ryan, on the one hand, and Nationwide, on the other, by, among other things, soliciting Nicole and Ryan to share Nationwide's confidential information with Fastapp; soliciting Nicole and Ryan to use Nationwide's confidential information on behalf of Fastapp in an effort to unfairly compete with Nationwide; and instructing or encouraging Nicole and Ryan to retain possession, custody, or control of Nationwide's confidential information after the termination of their employment with Nationwide. Nicole improperly and without privilege interfered with Ryan's obligations to Nationwide by taking similar actions, including by soliciting Ryan to forward Nationwide confidential information to her after her departure from the Company so she could use it to unfairly compete with Nationwide during her employment with Fastapp.

96.    Nicole and Ryan have actually breached their contractual obligations to Nationwide by, among other things, forwarding Nationwide confidential information to themselves, each other, and Fastapp; disclosing Nationwide's confidential information with third parties, including Fastapp; using Nationwide's confidential information to unfairly compete with it and for theirs and Fastapp's economic gain; and failing to return, and retaining possession of, Nationwide's confidential information after the termination of their employment with Nationwide.

97.     As a direct and proximate result of Fastapp's and Nicole's interference, and Nicole's and Ryan's actual breaches, Nationwide has sustained and will incur damages, including, but not limited to, damages reflecting lost business, lost profits, and damage to its goodwill. Fastapp and Nicole have been unjustly enriched by their actions. Nationwide has also suffered and will continue to suffer immediate and irreparable harm and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

## COUNT IX—TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### (Against All Defendants)

98.     Nationwide incorporates the preceding allegations as if fully set forth herein.

99.     At all times relevant hereto, Nationwide enjoyed economic relationships with its clients, with the probability of future economic benefit to Nationwide. Specifically, prior to Nicole and Ryan's departure, Nationwide had economic relationships with the clients managed by Nicole and Ryan on behalf of Nationwide.

100.    Defendants had knowledge of these relationships because Nicole and Ryan, as Nationwide employees, were the managers of Nationwide's relationships with the clients. Fastapp has knowledge of these relationships as a result of the conveyance of such information from Nicole and Ryan, and because such relationship was evident from the confidential information and emails forwarded by Nicole and Ryan to Fastapp.

101.    Defendants took intentional acts to disrupt Nationwide's relationships with clients by, among other things: (1) forwarding confidential information about such clients to Fastapp; and (2) using such confidential information to solicit the clients to divert their business from Nationwide to Fastapp.

102.   Upon information and belief, several top clients have, in fact, transferred their business from Nationwide to Fastapp.

103.   As a direct and proximate result of Defendants' intentional acts, Nationwide has sustained and will incur damages, including, but not limited to, damages reflecting lost business, lost profits, and damage to its goodwill. Nationwide has also suffered and will continue to suffer immediate and irreparable harm and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

### COUNT X—AIDING AND ABETTING

### (Against Defendants Fastapp and Nicole)

104.   Nationwide incorporates the preceding allegations as if fully set forth herein.

105.   At all times relevant hereto, Nicole and Ryan owed contractual, common law, and statutory duties to Nationwide. Nicole and Ryan were both parties to Non-Disclosure Agreements with Nationwide, under which both were required to maintain the confidentiality of Nationwide's information; prohibited from disclosing such information to third parties; prohibited from using such information in a manner inconsistent with the Non-Disclosure Agreements; and required to return Nationwide's confidential information upon termination of their employment. Additionally, pursuant to common law and California statutes, as set forth above, Nicole and Ryan owed Nationwide fiduciary duties, including a duty of loyalty, duty of obedience, duty of ordinary care and diligence, and duty to put Nationwide's interests first.

106.   Nicole and Ryan breached their duties to Nationwide, as described above.

107.   Fastapp knew or should have known that the above-listed acts taken by Nicole and Ryan constituted breaches of these duties. Nicole likewise knew or

COMPLAINT FOR DAMAGES

should have known that the acts taken by Ryan constituted breaches of the duties he owed to Nationwide.

108.   Nevertheless, Fastapp gave substantial assistance or encouragement to Nicole and Ryan, and Nicole gave substantial assistance or encouragement to Ryan, to engage in these acts. Specifically, upon information and belief, Fastapp encouraged Nicole to share Nationwide's confidential information with Fastapp representatives and employees and to use this information to divert business from Nationwide to Fastapp. Likewise, Nicole encouraged and assisted Ryan in engaging in the same acts.

109.   As a direct and proximate result of Fastapp and Nicole's aiding and abetting, Nationwide has sustained and will incur damages, including, but not limited to, damages reflecting lost business, lost profits, and damage to its goodwill. Nationwide has also suffered and will continue to suffer immediate and irreparable harm and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

## COUNT XI—CONSPIRACY
### (Against All Defendants)

110.   Nationwide incorporates the preceding allegations as if fully set forth herein.

111.   At all times relevant hereto, Defendants came together and agreed upon a common plan or design to improperly take Nationwide's confidential information; share that information with third parties and competitors, including Fastapp representatives and employees; and use that information to divert business from Nationwide to Fastapp.

112.   Pursuant to this agreement, Defendants did, in fact, commit the above-listed acts, which include, but are not limited to, the misappropriation of Nationwide's trade secrets and confidential information, breaches of fiduciary

duties, tortious interference with contractual relationships, and tortious interference with business relations.

113.   As a direct and proximate result of Defendants' scheme, Nationwide has sustained and will incur damages, including, but not limited to, damages reflecting lost business, lost profits, and damage to its goodwill. Nationwide has also suffered and will continue to suffer immediate and irreparable harm and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Nationwide prays for judgment and relief against Defendants as follows:

1.     For judgment in favor of Nationwide and against Defendants on all causes of action in the Complaint;

2.     For an Order directing Defendants to return all of Nationwide's information and property in their possession, custody, and control;

3.     For orders preliminarily and permanently enjoining Defendants and all persons or entities acting in concert with them from, directly or indirectly:

(a)     obtaining, using, or disclosing any of the trade secrets and/or confidential and proprietary information belonging to Nationwide for any purpose whatsoever;

(b)     accessing, retrieving, copying, deleting, destroying, altering, or disseminating any hard or electronic copies of documents containing Nationwide's trade secrets and/or confidential and proprietary information within their custody, possession, or control;

(c)     using, on their own behalf or on behalf of Fastapp, or providing Fastapp or its employees, or any third party, with Nationwide client-specific

information, not independently readily available to Fastapp's personnel, in order to enable Defendants to solicit Nationwide's clients, or potential clients, including, but not limited to, any information downloaded or forwarded from Nationwide's computers or systems and subsequently uploaded, stored, or forwarded to Defendants' computers or systems;

4.     For an order to inspect Nicole's and Ryan's personal devices and email accounts previously used during their employment with Nationwide to determine where and to whom Nationwide's trade secrets and confidential and proprietary information has been disseminated;

5.     For three times the amount of actual damages, including lost profits, according to proof, as set forth herein, in an amount in excess of the jurisdictional requirements;

6.     For restitution and disgorgement of all ill-gotten gains as set forth herein, in an amount to be proven at trial, but at least in excess of the jurisdictional requirements;

7.     For punitive and exemplary damages, according to proof at trial, for all causes of action for which such damages are authorized;

8.     For reasonable attorneys' fees and costs incurred herein as allowed by law;

9.     For pre- and post- judgment interest at the maximum legal rate, as applicable, as an element of damages that Nationwide has suffered as a result of Defendants' wrongful and unlawful acts; and

10.     For any other and further relief the Court may deem just and proper.

## VIII. JURY DEMAND

Nationwide demands a trial by jury.

COMPLAINT FOR DAMAGES

1    Dated:  November 4, 2020     **DLA PIPER LLP (US)**

2

3                           By: /s/  *Benjamin M. Gipson*

4                             BENJAMIN M. GIPSON

5                             MICHAEL W. MASSIATTE

                               MARIA A. GARRETT

6                             **DLA PIPER LLP (US)**

7                             Attorneys for Plaintiff

8                             NATIONWIDE PROPERTY &
                             APPRAISAL SERVICES LLC

9                             A New Jersey limited liability company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES